UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
Brucha Ungar, Miriam Lunger,
and Abraham Lunger

                Plaintiffs,                          COMPLAINT

       -against-                              DOCKET NO. 24-CV-1494

JetBlue Airways Corporation and
Jane Doe (a flight attendant,
the name being fictitious                       Jury Trial Demanded
as her identity is unknown),

                                                            **JURY TRIAL DEMANDED**

                Defendant.
-----------------------------------------------------X

Plaintiffs Brucha Ungar ("Mrs. Ungar"), Miriam Lunger ("Mrs. Lunger") and Abraham Lunger ("Mr. Lunger") ("collectively Plaintiffs") by and through their undersigned counsel, Brustein Law PLLC along with Risman & Risman P.C., as and for their Complaint in this action against Defendant JetBlue Airways Corporation ("JetBlue") and Defendant Jane Doe ("Doe"), as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful discriminatory practices and/or failure to accommodate committed against Plaintiffs, including Defendants' discriminatory treatment of Plaintiffs, violating their rights to be free from race discrimination under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Section 1981") and religious and race discrimination under the Unruh Civil Rights Act, California Civil Code §51 ("Unruh").

## PRELIMINARY STATEMENT

2. This action arises from a is a religious and racial discrimination case in which Plaintiffs seek damages to redress the deprivation of their rights. Plaintiffs entrusted JetBlue to fly them safely from

California to New York.

3. Plaintiffs are observant Jews and are members of a protected class.

4. Plaintiffs religion is Judaism and Plaintiffs are members of the Jewish race.

5. Defendants discriminatory and retaliatory conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiffs' rights, warranting an award of punitive damages. Such conduct has caused, and continues to cause Plaintiff to suffer substantial monetary damages, permanent harm to their personal reputation and/or severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

6. Plaintiffs reallege and incorporate by reference each and every averment set in the foregoing paragraphs.

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332 and 1343 as this action involves federal questions regarding the deprivation of Plaintiffs' rights under Section 1981. The Court has supplemental jurisdiction over Plaintiffs' related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

8. This action arises from JetBlue's discrimination against Plaintiffs on the basis of their race in the enforcement of their contracts with JetBlue. Accordingly, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

9. This Court also has jurisdiction over certain defendants pursuant to 28 U.S.C. §1367. The Court has pendent jurisdiction over plaintiffs' state law claims.

10. The Court has in personam jurisdiction in this matter because JetBlue maintains "minimum contacts" within the State of New York sufficient to confer "general jurisdiction" to this Court in that JetBlue operates daily flights to and from John F. Kennedy International Airport in Queens, County New York. Such activity constitutes "continuous and systemic"

contacts with the State of New York.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (c).

## JURY DEMAND

12. Plaintiffs demand a trial by jury in this action.

## PARTIES

### (a) Mrs. Brucha Ungar

13. Plaintiff Mrs. Brucha Ungar (hereinafter "Mrs. Ungar") resides in New York State.

14. Mrs. Ungar is a Jewish female.

15. Mrs. Ungar is an observant Orthodox Jewish woman.

16. In accordance with her religious beliefs, Mrs. Ungar dresses with her hair covered in a wig and modest clothes of long sleeves, covered neck and covered legs.

### (b) Mrs. Miriam Lunger

17. Plaintiff Mrs. Miriam Lunger (hereinafter "Mrs. Lunger") resides in New York State.

18. Mrs. Lunger is a Jewish female.

19. Mrs. Lunger is an observant Orthodox Jewish woman.

In accordance with her religious beliefs, Mrs. Lunger dresses with her hair covered in a wig and modest clothes of long sleeves, covered neck and covered legs.

### (c) Mr. Abraham Lunger

20. Plaintiff Mr. Abraham Lunger (hereinafter "Mr. Lunger") resides in New York State.

21. Mr. Lunger is a Jewish male.

22. Mr. Lunger is an observant Orthodox Jewish male.

23. In accordance with his religious beliefs, Mr. Lunger dresses in a black coat, black hat, and has

a full beard and Payos, which are long sideburns that hang down from the sides of his head.

**(d) JetBlue**

24. Defendant JetBlue is a New York, for-profit corporation with its principal place of business in Long Island City, New York, New York.  At all times material to the averments set forth herein, JetBlue was engaged in the transportation industry and regularly transacted and continues to regularly transact business in the State of New York, County of Queens.

25. JetBlue places regulations, policies, and procedures for airline crew on ensuring the safety of customers at an altitude of at least 8,000 feet.

26. Upon information and belief, JetBlue assigned flight attendants to ensure the safety of passengers onboard JetBlue Flight (need the number) from Palm Springs International Airport to John F. Kennedy International Airport on or about December 31, 2023.

27. Upon information and belief, at all relevant times, the JetBlue flight attendants aboard the flight were employed by Defendant as flight attendants.

28. Upon information and belief, JetBlue can sue and be sued.

**(e) Jane Doe – flight attendant**

29. At all relevant times, Defendant Jane Doe was employed by JetBlue as a flight attendant.  Plaintiffs do not know Defendant Doe's real name.

30. At all relevant times, Defendant Doe was acting as an agent, servant, and employee of JetBlue. Defendant Doe is sued in her individual and official capacities.

**FACTUAL ALLEGATIONS**

31. On or about December 31, 2023, Plaintiffs Mrs. Ungar, Mrs. Lunger and Mr. Lunger were scheduled to take the redeye JetBlue Flight 2050 ("the Flight") from Palm Springs International Airport in California to John F. Kennedy International Airport in New York.

32. The Flight was estimated to take four hours and fifty-four minutes.

33. Mrs. Ungar had a separate ticket reservation from Mr. and Mrs. Lunger.

34. Mrs. Ungar was assigned her seat before arriving at Palm Springs International Airport.

35. Mr. and Mrs. Lunger were assigned seats from the ticket agent when they arrived at the Palm Springs International Airport.

36. Due to his religious beliefs, Mr. Lunger is unable to sit next to a woman unless she is a blood relative or his wife.

37. Mr. Lunger had no blood relatives on the flight so the only woman his religious beliefs allowed him to sit next was his wife.

38. Upon arriving at the gate before boarding the Flight, Mrs. Lunger asked the JetBlue ticket agent if Mr. Lunger could be seated next to her, or at least not next to another woman, due to his religious modesty beliefs, and the JetBlue ticket agent told Mrs. Lunger that they could try to change their seats on the plane and make arrangements with other passengers.

39. Mr. Lunger was assigned seat 18a, not with Mrs. Lunger who had been assigned seat 21b.

40. Mr. Lunger boarded the flight and sat in seat 18a.

41. Mr. Lunger waited patiently in his seat to see if the seat next to him would be taken by a man or a woman.

42. When a woman went to sit in seat 18b, Mr. Lunger quietly got up from his seat and stood in the aisle in order to adhere to his religious beliefs and not sit next to a female passenger.

43. Before Mr. Lunger could ask someone to switch seats with him, Defendant Doe yelled at Mr. Lunger to go back to his seat.

44. Mrs. Lunger than told Defendant Doe that because of his religious beliefs, he was trying to switch seats to not sit next to a woman.

45. Defendant Doe refused to accept that explanation and attempted to prevent Mr. Lunger from switching seats with another passenger who had agreed to switch seats.

46. Other passengers overheard the conversation about Mr. Lunger's seat, and offered to change

their seats to accommodate Mr. Lunger's religious beliefs.

47. Upon information and belief, passengers often switch seats with other passengers on airline flights.

48. At no time while Mr. Lunger was trying to observe his religious beliefs, did he force, become loud, or use a stern voice to intimidate any other passengers into changing seats with him.

49. Even though Mr. Lunger had figured out a way to observe his religious beliefs without interfering with the flight, Defendant Doe discriminated against Mr. Lunger because of his race and his religion.

50. Defendant Doe brought the JetBlue pilot to the back of the plane.

51. The JetBlue pilot falsely told the Plaintiffs that they could not change seats because it was a violation and it would cause a weight imbalance.

52. The airplane had more than 100 passenger seats.

53. Defendant Doe had no legitimate basis for claiming that Mr. Lunger's switching seats was a violation because of any potential weight imbalance.

54. The seat change that Mr. Lunger attempted to do was on the same side of the aircraft, just a few rows in front of his original seat.

55. The man who offered to change seats was physically very similar in weight to Mr. Lunger.

56. At no point previously did JetBlue ask for weight information to assign the original seat arrangements.

57. At no point on the flight did JetBlue ask for weight information of any of the passengers.

58. Although Mr. Lunger had found an alternate seat by communicating directly with other passengers that would have allowed him to observe his religious beliefs, Defendant Doe went to get pilot.

59. The pilot came out to speak to Mr. Lunger, who had changed seats, and to Mrs. Lunger and Mrs. Ungar who had only tried to explain Mr. Lunger's need to switch seats to Defendant Doe.

60. The pilot told the three Plaintiffs, "Sorry, you have to get off the plane. The crew members don't feel safe flying with you. The flight will not leave with you on the plane."

61. The only individuals kicked off of the Flight were the Plaintiffs who were each dressed in clothing, which readily identified them as Orthodox Jews ("Orthodox Jewish Attire").

62. Even though other passengers, who were not dressed in Orthodox Jewish Attire, had switched seats on the plane, either with Mr. Lunger or someone else, only the Plaintiffs were kicked off the plane.

63. Even though Mrs. Lunger and Mrs. Ungar had not been falsely accused of causing a weight imbalance by switching seats, like Mr. Lunger had been, JetBlue and the pilot still kicked them off the plane.

64. Another passenger, who was not dressed in Orthodox Jewish Attire, had also objected to Mr. Lunger being denied the ability to observe his religion, but she was not kicked off the flight like Mrs. Lunger and Mrs. Ungar.

65. Another passenger on board who witnessed this antisemitic behavior tweeted "this was resolved pretty easily (my boyfriend gladly switched seats once he realized what the need was) and everyone was seated and waiting. Then they were kicked off."

66. Mrs. Lunger tried to reason with the pilot and said "this is only for religious purposes" but the pilot would not change his mind.

67. Mortified and embarrassed, the Plaintiffs exited the aircraft.

68. The Plaintiffs asked to get their suitcases but were told they could not.

69. Once de-boarded, the Plaintiffs spoke to the JetBlue ticket agent at the gate who informed them that JetBlue would not provide overnight accommodations, food or transportation.

70. The plaintiffs had to call JetBlue to arrange for tickets for a return flight the following day, charging them for both the price change and ticket charge for same day change, and JetBlue claimed that Plaintiffs never boarded their flight but rather missed the flight.

## FIRST CAUSE OF ACTION
Civil Rights Violations Under the Civil Rights Act of 1866, 42 U.S.C. § 1981(a)
(against Defendants)

71. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

72. Under Civil Rights Violations Under the Civil Rights Act of 1866, 42 U.S.C. § 1981 (a) it shall be an unlawful discriminatory practice by discriminating against the Plaintiffs on the basis of their Jewish race in a matter of contract...and prohibits racial discrimination in making and enforcing private contracts.

73. As a result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer, extreme mental distress, emotional distress, humiliation, anxiety, depression, embarrassment, loss of self-esteem, insomnia, and have been otherwise greatly injured and severely damaged.

74. By virtue of Defendants' actions, Plaintiffs continues to suffer loss and damage.

75. As a result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer, extreme mental distress, emotional distress, humiliation, anxiety, depression, embarrassment, loss of self-esteem, insomnia, and have been otherwise greatly injured and severely damaged.

76. As a result of the foregoing, Plaintiffs are entitled to recover compensatory damages and punitive damages in an amount to be determined at trial as well as attorneys' fees and costs.

77. Plaintiffs seek an award of pre- and post-judgment interest as permitted by law.

## SECOND CAUSE OF ACTION
Discrimination and Harassment in Violation of Section 1981
(against Defendants)

78. Plaintiffs hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

79. At all times relevant hereto, Plaintiffs, despite being members of the Jewish race and observing Judaism, had the same civil right to be treated equally in making and enforcing contracts and to be subject to the same punishments, pains, penalties, as non-Jewish citizens, and to no other, pursuant to 42 U.S.C. § 1981.

80. Stemming from this right, Plaintiffs had the right to the performance, benefits, privileges, terms, and conditions of the contracts they entered into.

81. As such, when Plaintiff contracted with JetBlue, a commercial air carrier engaged in air transportation services for passage on Flight 4620 from Palm Springs International Airport to JFK, as paying passengers and contracting parties, they had the right to be treated equally and in a manner free from discrimination pursuant to 42 U.S.C. § 1981.

82. Plaintiffs had equal rights to the performance, benefits, privileges, terms, and conditions of the contract entered into with JetBlue for travel on the commercial air carrier pursuant to 42 U.S.C. § 1981.

83. Plaintiffs were unable to enjoy the performance, benefits, privileges, terms, and conditions of the contracts they entered into with JetBlue because they were wrongfully removed from the flight.

84. JetBlue intentionally and purposefully discriminated against Plaintiffs based on their race when, by and through their employees and agents, it wrongfully removed Plaintiffs from their contracted-for flight on December 31, 2023, despite Plaintiffs doing nothing wrong.

85. As a direct and proximate result of the Defendants' unlawful discriminatory conduct and harassment in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, monetary and/or economic harm, including but not limited to, compensation and benefits for which they are entitled to an award of damages.

86. As a direct and proximate result of the Defendants' unlawful discriminatory conduct and harassment in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of damages.

87. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
(Retaliation in Violation of Section 1981)
(against Defendants)

88. Plaintiffs hereby repeat, reiterate and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

89. Defendants have retaliated against Plaintiffs by, inter alia, by ejecting them from the Flight, in violation of Section 1981 for their opposition to discriminatory practices directed toward Mr. Lunger, in preventing him from observing his religious beliefs and practices.

90. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiffs have suffered, and continues to suffer, monetary and/or economic harm for which they are entitled to an award of monetary damages and other relief.

91. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

92. Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiffs are entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
(Violations of the Unruh Civil Rights Act)
(against Defendant JetBlue)

93. Plaintiffs hereby repeat, reiterate and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

94. The Unruh Civil Rights Act, California Civil Code § 51 *et seq..* ("UCRA") guarantees equal access for people of all religions to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant Jetblue's above actions violated the UCRA,

95. Defendant JetBlue is a business entity, conducting regular business within the State of California, and as such is a "business establishment" within the meaning of UCRA.

96. Religion under UCRA includes all aspects of religious belief, observance, and practice.

97. JetBlue provides services in California and is subject to UCRA.

98. By preventing Mr. Lunger from switching seats in observance of his religious beliefs, Defendant JetBlue has violated UCRA.

99. Defendant JetBlue's actions constitute intentional discrimination against Plaintiff on the basis of his Jewish religion in violation of the UCRA.

100. The Plaintiffs engaged in protected activity under UCRA when they objected to Defendant Jane Doe preventing Mr. Lunger from switching seats with another passenger.

101. Defendant JetBlue further violated UCRA when it retaliated against the Plaintiffs by kicking all three Plaintiffs off of the Flight.

102. Defendant JetBlue had no legitimate basis or justification for kicking any of the Plaintiffs off of the Flight.

103. Kicking the Plaintiffs off the Flight was an adverse action for engaging in protected activity.

104. As a direct and proximate result of Defendant JetBlue's discriminatory and retaliatory conduct in violation of UCRA, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

105. Defendant JetBlue's unlawful retaliatory actions constitute malicious, willful and wanton violations of UCRA for which Plaintiffs are entitled to an award of punitive damages.

FIFTH CAUSE OF ACTION
(Aiding and Abetting Violations of the Unruh Civil Rights Act)
(against Defendant Jane Doe)

106. Plaintiffs hereby repeat, reiterate and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

107. Defendant Jane Doe above actions denied the Plaintiffs equal access to the services of JetBlue on the basis of their religion.

108. Defendant Jane Doe incited a denial of the Plaintiffs equal access to the services of JetBlue on the basis of their religion.

109. Defendant Jane Doe aided in the denial of the Plaintiffs equal access to the services of JetBlue on the basis of their religion.

110. Defendant Jane Doe discriminated against the Plaintiffs on the basis of their religion and denied them equal access to JetBlue's services.

111. Defendant Jane Doe retaliated against Plaintiffs for engaging in protected activity.

112. Defendant Jane Doe is liable under UCRA as an aider and abetter.

113. As a direct and proximate result of Defendant Jane Doe's above actions in violation of UCRA, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

114. Defendant JetBlue's unlawful retaliatory actions constitute malicious, willful and wanton violations of UCRA for which Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that judgment be entered:

a. Awarding Plaintiffs full and fair compensatory damages in an amount to be determined by the jury;

b. Awarding Plaintiffs full and fair punitive damages in an amount to be determined by the jury;

c. Awarding Plaintiffs reasonable attorneys' fees; and,

d. Granting such other relief as this Court may deem just and proper.

Dated: New York, New York
February 27, 2024

        BRUSTEIN LAW, PLLC

        _____/s/_____
        Evan Brustein
        299 Broadway, 17th Floor
        New York, NY 10007
        (212) 233-3900

        *Attorneys for Plaintiff*

        RISMAN AND RISMAN, PC

        _____/s/_____
        Maya Risman
        299 Broadway, 17th Floor
        New York, NY 10007
        (212) 233-6400

        *Attorneys for Plaintiffs*