UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCHA UNGAR, MIRIAM LUNGER, and ABRAHAM LUNGER, <br><br> Plaintiffs, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION, JANE DOE (a flight attendant, the name being fictitious as her identity is unknown), and JOHN DOE (a flight captain/pilot, the name being fictitious as his identity is unknown), <br><br> Defendants. | No. 24-CV-1494 (RA) <br><br> MEMORANDUM <br> OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiffs Brucha Ungar, Miriam Lunger, and Abraham Lunger bring claims of unlawful discrimination pursuant to state and federal law against Defendants JetBlue Airways Corporation ("JetBlue"), a JetBlue flight attendant ("Jane Doe"), and a JetBlue pilot ("John Doe"), in connection with their ejection from a flight from California to New York on December 31, 2023. Before this Court is JetBlue's motion to dismiss the Amended Complaint, Dkt. No. 23 ("AC"), for improper venue and failure to state a claim, *see* Dkt. Nos. 24, 26 ("Mot. to Dismiss"). Plaintiffs oppose. *See* Dkt. No. 31 ("Opp'n"). For the reasons set forth below, the Court finds that venue is improper in the Southern District of New York and grants the pending motion to dismiss on that basis.

## BACKGROUND

On December 31, 2023, Plaintiffs—three observant Orthodox Jewish residents of New York State, dressed in attire that "readily identified them" as such, AC ¶ 69—arrived at the Palm

Springs International Airport in California for their JetBlue flight to John F. Kennedy International Airport in New York. *Id.* ¶¶ 13–24, 37. Plaintiffs had previously purchased their tickets while they were in the Southern District of New York, the district in which they reside. *Id.* ¶¶ 13, 17, 21, 35. Due to the type of ticket she had purchased, Plaintiff Ungar was assigned a seat in advance; Plaintiffs Miriam and Abraham Lunger, a married couple, were assigned their seats after they arrived at the airport. *Id.* ¶¶ 40–41.

When the Lungers reached the gate for their flight, Miriam asked the JetBlue ticket agent to assign her husband Abraham a seat either "next to her, or next to a man, due to his religious modesty beliefs." *Id.* ¶ 44. The agent declined to do so, but informed Miriam that she and her husband could try to change their seats on the plane. *Id.* ¶¶ 45–46.

After boarding, Abraham discovered that a woman had been assigned the seat next to his. *Id.* ¶ 49. When the passenger went to sit beside him, Abraham stood and waited in the aisle, *id.*, at which point Defendant Jane Doe, a flight attendant, allegedly "yelled" at Abraham to return to his seat, *id.* ¶ 50. Miriam informed the attendant that he was attempting to change his seat because of his religious beliefs. *Id.* ¶ 51. When another passenger agreed to switch seats with Abraham, the attendant, Plaintiffs claim, prevented them from doing so. *Id.* ¶ 52.

The attendant then sought help from the flight's pilot, Defendant John Doe. *Id.* ¶ 57. The pilot informed Abraham that he could not change seats because it would be "a violation and it would cause a weight imbalance." *Id.* ¶ 58. The pilot instructed Plaintiffs—including Ungar and Miriam, who had been attempting to explain Abraham's desire to switch seats to JetBlue staff aboard the aircraft, *id.* ¶ 67—that they had to exit the plane because crew members did not "feel safe flying" with them and the flight would "not leave with [them] on the plane." *Id.* ¶ 68. Plaintiffs allege that no other passenger, including the passenger who offered to switch seats with Abraham,

was asked to exit the aircraft. *Id.* ¶ 70.

Plaintiffs then exited the plane. *Id.* ¶¶ 82–83. JetBlue neither permitted them to take their suitcases from the aircraft, nor provided them with overnight accommodations, food, or transportation. *Id.* ¶¶ 83–84. When Plaintiffs called JetBlue to arrange a new return flight, Defendant charged them the price change and a ticket charge for the change of flight. *Id.* ¶ 85.

JetBlue has moved to dismiss the federal claims primarily for lack of venue and failure to state a claim, as well as on the basis that the Contract of Carriage (the "Contract") between the parties bars Plaintiffs' claims. *See* Mot. to Dismiss 6–10, 13–17. Although they do not refer to the Contract in their Amended Complaint, or attach the Contract to their pleadings, it is undisputed that Plaintiffs entered into the Contract with JetBlue when they purchased their tickets, and both parties rely on this fact in their briefing. *See* Mot. to Dismiss 3; Opp'n 14; Dkt. No. 25 ¶ 2.

## LEGAL STANDARD

To survive dismissal for improper venue pursuant to Rule 12(b)(3), a plaintiff bears the burden of "mak[ing] a *prima facie* showing of venue" on the basis of the pleadings and affidavits.[1] *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986)). Although a court may hold an evidentiary hearing at which "the plaintiff must demonstrate venue by a preponderance of the evidence," *id.*, a hearing is not necessary here because the parties do not dispute the facts relevant to determination of venue.

In deciding a Rule 12(b)(3) motion, a court must accept "all allegations in the complaint as true, unless contradicted by the defendants' affidavits." *U.S.E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (2d ed. 1990 & Supp. 1999)). "When an

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

allegation is so challenged a court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* "[I]n a case of multiple claims, proper venue must be established with respect to each cause of action asserted," *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 386 (S.D.N.Y. 2010) (quoting *Rothstein v. Carriere*, 41 F. Supp. 2d 381, 386 (E.D.N.Y. 1999)), and "each defendant," *P.C. v. Driscoll*, No. 24-CV-2496 (LJL), 2025 WL 104522, at *4 (S.D.N.Y. Jan. 15, 2025).

When venue is improper, the court "shall dismiss" the action, or, if it is "in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision whether to transfer or dismiss "lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

## DISCUSSION

### I.    Venue

"[I]t is hornbook law that venue . . . [is a] threshold procedural issue[] to be decided before the substantive grounds in a motion to dismiss." *Basile*, 717 F. Supp. 2d at 385. The federal civil venue statute establishes three bases that give rise to venue within a district:

> A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The Court concludes that Plaintiffs have not established a basis for venue in the Southern District of New York.

4

**A.  Subsection 1391(b)(1)**

First, the pleadings in this action do not give rise to venue based on Defendants' residency under § 1391(b)(1). Subsection 1391(b)(1) authorizes a plaintiff to bring a civil action in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* § 1391(b)(1).

Natural persons—such as John and Jane Doe—are "deemed to reside in the judicial district in which that person is domiciled." *Id.* § 1391(c)(1). "It is unclear" from the Amended Complaint, however, "where each of the [Doe] defendants reside, let alone whether they reside within this judicial district" or in another state. *Johnson v. Bragg*, No. 22-CV-8651 (LTS), 2022 WL 17832566, at *5 (S.D.N.Y. Dec. 20, 2022); *see* AC ¶¶ 30–33 (stating that Plaintiffs do not know the names of Jane or John Doe and failing to allege their residencies). Without this information, the Court cannot determine whether "all defendants are residents of the State in which the district is located," 28 U.S.C. § 1391(b)(1), and thus "whether this court is a proper venue for all of Plaintiff[s'] claims under Section 1391(b)(1)," *Johnson*, 2022 WL 17832566, at *5. *See Matthews v. Cuomo*, No. 16 Civ. 4210 (NRB), 2017 WL 2266979, at *2 (S.D.N.Y. May 1, 2017) (even where plaintiffs alleged that all known and Doe defendants lived in New York, allegations that they "'anticipate' and 'believe' that several of the John Doe defendants reside in the Southern District" were "too speculative" to establish venue in district); *Taylor v. N.Y. Dep't of Corr. Emps.*, No. 22-CV-9747 (ALC), 2023 WL 112603, at *2 (S.D.N.Y. Jan. 5, 2023) (concluding that the court lacked venue under § 1391(b)(2) where plaintiff had "not allege[d] any facts showing where" known and Doe defendants resided); *Hennings v. Greene*, No. 25-CV-1107 (LTS), 2025 WL 1410805 (S.D.N.Y. Apr. 3, 2025) (because plaintiff had not pled the residences of the known and Doe defendants, it was "unclear whether venue [was] proper under Section 1391(b)(1)"). Accordingly,

Plaintiffs have not established venue based on residency under subsection one.[2]

### B. Subsection 1391(b)(2)

Plaintiffs have also failed to establish venue under § 1391(b)(2). Subsection (b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). This provision "permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Gulf Ins. Co.*, 417 F.3d at 356. While Plaintiffs rightly note that a claimant need not file in the "best venue" or the "most convenient forum," Opp'n 13; *see Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 59 (2d Cir. 2007), the Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial,'" and to "construe the venue statute strictly," *Gulf Ins. Co.*, 417 F.3d at 357. "That means for venue to be proper, *significant* events or omissions *material* to

---

[2] Plaintiffs bring one claim solely against JetBlue—for violation of the Unruh Civil Rights Act under California law. Even assuming that venue is proper in this district against JetBlue, in light of this Court's dismissal of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over this remaining state law claim. *See TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will weigh in favor of declining to exercise supplemental jurisdiction." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Furthermore, in light of the "intertwined" nature of the claims and Defendants, the Court declines to dismiss the Does and/or sever the claims. *Jewell v. Music Lifeboat*, 254 F. Supp. 3d 410, 422 (E.D.N.Y. 2017) (explaining that "severing the [plaintiffs'] claims and litigating [a] case piecemeal is disfavored when (1) there is a venue that would be proper for all the defendants in which the entire case could be litigated at once, . . . ; and (2) the claims and parties are intertwined, as they are here, and the same issues and witnesses, who are located in both forums, are involved"). Accordingly, the Court dismisses the Unruh Civil Rights Act claim against JetBlue without prejudice.

If Plaintiffs choose to file a second amended complaint, they are advised that they must properly allege that venue is appropriate in this district with respect to each claim and defendant. *See Basile*, 717 F. Supp. 2d at 386. For purposes of venue, a corporation such as JetBlue is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). "[I]n a State"—such as New York—"which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ." *Id.* § 1391(d). JetBlue may therefore be deemed a resident of the Southern District of New York if it was subject to personal jurisdiction—whether general or specific—in this district when this action was filed. *See Cavit Cantina Viticoltori Consorzio Cantine Sociali Del Trentino Societa Cooperativa v. Browman Family Vineyards, Inc.*, 656 F. Supp. 2d 421, 426 (S.D.N.Y. 2009). Accordingly, Plaintiffs must make a *prima facie* showing that either general jurisdiction or specific jurisdiction exists in the Southern—and not simply the Eastern—District of New York. *See* AC ¶ 25 (alleging that JetBlue's principal place of business is in the Eastern District of New York).

the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Id.* This analysis is distinct from a personal jurisdiction analysis. *See id.* ("It would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries."); *United States ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969) ("The concepts of personal jurisdiction and venue are closely related but nonetheless distinct.").

A two-part test guides this analysis. "First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether significant events or omissions material to those claims have occurred in the district in question." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (quoting *Gulf Ins. Co.*, 417 F.3d at 357). "Substantiality for venue purposes is more a qualitative than a quantitative inquiry . . . . When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed significant and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 432–33. When evaluating acts or omissions within the district, "[t]he focus is on the relevant activities of the defendant, not the plaintiff, because the purpose of statutorily defined venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Six Dimensions, Inc. v. Perficient, Inc.*, No. 15 Civ. 8309 (PGG), 2017 WL 10676897, at *2 (S.D.N.Y. Mar. 28, 2017) (emphasis omitted).

While Plaintiffs baldly assert that "[a] substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York," AC ¶ 36, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation, nor [is it] required to accept as

true allegations that are wholly conclusory," *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). Plaintiffs allege that venue is proper in the Southern District of New York because they "bought their tickets and entered into the Contract of Carriage within this District." Opp'n 14; *see* AC ¶¶ 34–35 (alleging that Plaintiffs purchased their tickets while located in the Southern District of New York, where they live). Because JetBlue's motion to dismiss is predicated on the Contract of Carriage, Plaintiffs say, the Contract constitutes "a substantial part of the claims at issue in this action" and thus gives rise to venue in the district in which Plaintiffs were located when they entered into it. Opp'n 14. The Court is not persuaded.

Plaintiffs' claims sound in tort, not contract. *Cf. Gulf Ins. Co.*, 417 F.3d at 357 (finding that, because the "essence of the suit" was whether defendants breached the insurance contract, venue would be appropriate in the Southern District of New York if plaintiff could prove that policy was "negotiated, approved, and executed" within the district). Indeed, even though Plaintiffs now suggest this case includes a contract dispute, they do not bring a breach of contract claim or even identify the Contract of Carriage in their pleadings.

Rather, Plaintiffs bring claims for discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1981, as well as for violations of the California Unruh Civil Rights Act. AC ¶¶ 86–130. As is evident from their pleadings, the alleged acts giving rise to their tort claims— Defendants' ejection of Plaintiffs from the plane, Defendants' purported discrimination against them, and the events that followed—took place exclusively in California. *See id.* ¶ 37 (flight was scheduled to depart from Palm Springs); *id.* ¶ 41 (Lungers were assigned seats upon arrival at Palm Springs airport); *id.* ¶¶ 58–69 (employees required Plaintiffs to leave plane during boarding process in Palm Springs airport); *id.* ¶¶ 84–85 (JetBlue refused to pay for overnight accommodations, food, transportation, or price change and fees associated with return flight the

following day). And to the extent Plaintiffs were harmed by Defendants' actions, they suffered it in California. *See Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 498, 548 (S.D.N.Y. 2024) (explaining that the location in which plaintiffs suffered harm is also relevant to the venue analysis).

It is true that Plaintiffs invoke an unnamed contract in their pleadings when asserting violations of § 1981, which "prohibits racial discrimination in the making and enforcement of private contracts." *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 260 (2d Cir. 2000). They allege, for example, that Defendants "discriminated against [them] on the basis of their Jewish race," despite entering a contract with Plaintiffs for the flight out of Palm Springs. AC ¶¶ 88–89; *see also id.* ¶ 96 ("Plaintiffs had the right to the performance, benefits, privileges, terms, and conditions of the contracts they entered into."); *id.* ¶ 100 ("JetBlue intentionally and purposefully discriminated against Plaintiffs based on their race when . . . it wrongfully removed Plaintiffs from their contracted-for flight . . . .").

But even if Plaintiffs' claims do "sound[] in contract," they do not allege that the Contract of Carriage was negotiated, breached, or to be performed here. *Gulf Ins. Co.*, 417 F.3d at 357 ("Courts making venue determinations in contract disputes have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred."). In the absence of these factors, entering a contract within the district is insufficient to give rise to venue under § 1391(b)(2) here. *See Washington v. Networks Presentations*, No. 24-CV-00299 (ALC), 2025 WL 968741, at *9 (S.D.N.Y. Mar. 31, 2025) (dismissing § 1981 claim for improper venue where plaintiff's employment contract was "formed and signed in the Southern District but largely performed outside of it"). This is especially true given that the conduct at the core of Plaintiffs' allegations—"racial discrimination"—occurred

outside the district.

In short, Plaintiffs' actions within the Southern District are "*de minimis*" and thus "cannot satisfy this Court's substantiality requirement for venue." *Blakely v. Lew*, 607 Fed. App'x 15, 17 (2d Cir. 2015) (summary order); *see also Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 Civ. 8677 (AT), 2018 WL 3407702, at *16 (S.D.N.Y. Feb. 7, 2018) ("Although some of the events giving rise to claims . . . occurred in New York, the Court finds that they substantially took place in the Central District of California."); *Seneca Ins. Co. v. Henrietta Oil Co.*, No. 02 Civ. 3535 (DC), 2003 WL 255317, at *4–*5 (S.D.N.Y. Feb. 4, 2003) (finding issuance and processing of insurance policy in New York insufficient to establish venue where "[a]ll of the key events occurred in Texas"). Entry into the Contract of Carriage, although pertinent to an analysis under Rule 12(b)(6), simply does not bear a "close nexus to . . . the acts about which [Plaintiffs] complain[]." *Dixon v. Reid*, 744 F. Supp. 3d 323, 331 (S.D.N.Y. 2024) (concluding that plaintiff had pled *prima facie* case that venue was proper in the Southern District in false imprisonment suit where the planning and coordination for a company retreat occurred within the district and bore a "close nexus to the acts about which she complain[ed]").

Plaintiffs' arguments to the contrary are unpersuasive. The cases on which they rely are factually distinguishable from the one at bar. *Edward Roberts, LLC v. Indiana Economic Development Corp.*, for example, concerned heavily negotiated contractual provisions. No. 22-CV-985 (PKC) (RLM), 2022 WL 17492467, at *5 (E.D.N.Y. Nov. 21, 2022). In *Bates v. C & S Adjusters, Inc.*, the plaintiffs' receipt of collection notices within the district gave rise to the harm they suffered. 980 F.2d 865, 868 (2d Cir. 1992). Under Plaintiffs' theory, venue would be proper in any district where a ticket or product is purchased, regardless of whether the purchase was "*significant*" or "*material* to the plaintiff's claim." *Gulf Ins. Co.*, 417 F.3d at 357. Presumably, this

result would frequently render venue proper in the district of a plaintiff's residence, irrespective of the district's relationship to the claim at issue, a result Congress expressly sought to avoid when amending § 1391 to omit a plaintiff's home district as a basis for venue. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979) ("[I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff . . . ."); *see also Fedele v. Harris*, 18 F. Supp. 3d 309, 318 (E.D.N.Y. 2014) ("If the situs of a plaintiff's economic injury were dispositive, §§ 1391(a)(1) and 1391(a)(3) would be superfluous. A plaintiff could always sue in its home district because, after all, home is where the wallet is . . . . Congress amended § 1391 specifically to remove the plaintiff's home from the venue equation." (quoting *MB Financial Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 918 (N.D. Ill. Sept. 23, 2010)); *Six Dimensions, Inc.*, 2017 WL 10676897, at *2 (explaining that, for purposes of venue, "[t]he focus is on the relevant activities of the defendant, not the plaintiff"). For the foregoing reasons, Plaintiffs' pleadings do not establish venue under § 1391(b)(2) in the Southern District of New York.

### C. Subsection 1391(b)(3)

Subsection three also does not provide a basis for venue in this district. Pursuant to § 1391(b)(3), "if there is no district in which an action may otherwise be brought as provided in this section," venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). Because there is at least one district in which this action can be brought pursuant to § 1391(b)(2), the Central District of California, subsection three is inapplicable. *See Daniel*, 428 F.3d at 434 ("[V]enue may be based on [this] subsection only if venue cannot be established in another district pursuant to any other venue provision."); 14D Charles Wright & Arthur Miller, Federal Practice & Procedure § 3806.1 (3d ed. 2024) (describing § 1391(b)(3) as a "fallback" provision that "applies *only* if there is no

federal district that will satisfy either the residential venue or transaction venue provisions" of § 1391(b)); *see also Schwarzennegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–03 (9th Cir. 2004) (discussing circuit's three-prong test for establishing specific personal jurisdiction). Accordingly, Plaintiffs have not established a basis for venue in the Southern District of New York.

## II.    Leave to Amend

A district court may *sua sponte* grant leave to amend, *see JoySuds, LLC v. N.V. Labs, Inc.*, 668 F. Supp. 3d 240, 262 (S.D.N.Y. 2023), and "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). The Court thus grants Plaintiffs an opportunity to file a second amended complaint. *See, e.g.*, *Johnson*, 2022 WL 17832566, at *5 (dismissing for improper venue and permitting plaintiff to amend complaint to allege defendants' residencies). Should they elect to do so, they must attempt to address each of the bases for dismissal that JetBlue identifies in its motion to dismiss. If Plaintiffs are unable to adequately allege venue in this district after amendment, they are advised that the Court may transfer the claim pursuant to 28 U.S.C. § 1406(a).

## CONCLUSION

For the foregoing reasons, the Court grants JetBlue's motion to dismiss for improper venue, albeit without prejudice. Should they elect to do so, Plaintiffs shall have thirty (30) days to file a second amended complaint, provided they have a good-faith basis to do so. The Clerk of Court is respectfully directed to close the motion pending at Dkt. No. 24.

SO ORDERED.

Dated:    September 23, 2025
         New York, New York

_____
Ronnie Abrams
United States District Judge